UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 09-cr-243 (GK) |
| | ) | |
| MICHAEL MONZEL, | ) | **FILED** |
| | ) | |
| Defendant. | ) | OCT 22 2010 |
| | ) | |

Clerk, U.S. District and
Bankruptcy Courts

### MEMORANDUM OPINION

On December 10, 2009, Defendant Michael Monzel pled guilty to one count of distribution of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B). This matter is before the Court on the Government's Motion for an Order of Restitution pursuant to 18 U.S.C. § 2259 [Dkt. No. 34]. On September 16, 2010, the parties filed supplemental briefing on the issue of whether the Government's failure to meet the time limitations in the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. §§ 3664(d)(1) and (d)(5), bars its Motion for an Order of Restitution. On September 27, 2010, Defendant submitted a Reply to the Government's Memorandum [Dkt. No. 42].

On September 30, 2010, a status conference was held in this case in which oral argument was heard on the time limitations in the MVRA. Defendant also requested discovery on the Government's Motion. On October 5, 2010, a motion hearing was held in which parties presented oral argument on the Government's Motion.

(N)

Upon consideration of the parties' motions, oppositions, and replies, the oral argument presented by the parties at the September 30, 2010 status conference and the October 5, 2010 motion hearing, and the entire record herein, and for the reasons set forth below, the Court concludes that (1) the Government's Motion for an Order of Restitution **is not time-barred**; and (2) the Government has met its burden to prove proximate cause in support of its Motion for an Order of Restitution. In addition, Defendant's discovery request is **denied.** Consequently, the Government's Motion for an Order of Restitution is **granted.** The parties shall file additional briefing on damages by **December 20, 2010**.

## I. Background[1]

On December 10, 2009, Defendant pled guilty to one count of distribution of child pornography[2] and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (a)(4)(B). 18 U.S.C. § 2259, which was enacted in 1994 as part of the Violence Against Women Act, Publ. L. No. 103-322, 108 Stat. 1976, makes restitution mandatory for offenses under § 2252

---

[1]    The parties do not dispute the facts set forth herein.

[2]    Monzel did not distribute any images which depicted the three victims seeking restitution in this case, although such images were in his possession. Consequently, the victims' claims for restitution are based only on Defendant's conviction of possession of child pornography. Govt.'s Mot. at 8 n.5.

-2-

involving the sexual exploitation and other abuse of children. See 18 U.S.C. § 2259.

As a part of his plea, Monzel signed a plea agreement which stated that he:

> [U]nderstands that in addition to the other penalties provided by law, pursuant to 18 U.S.C. § 2259 and 3664, it is mandatory that the Court order [Defendant] to make restitution for the full amount of any victim(s)' compensable losses. . . . [Defendant] understands that the government will request that the Court order restitution for any identified victim for the full amount of his/her losses that were caused by [Defendant's] crime that is the subject of this plea agreement.

Plea Agreement at ¶ 20 [Dkt. No. 11].[3] In addition, the Court made clear to both parties at the plea hearing that restitution was mandatory under § 2259. Tr. at 27-28 (Dec. 10, 2009). At the end of that hearing, the Court ordered the parties to submit sentencing memoranda by March 30, 2010 and continued the sentencing until April 15, 2010.

On February 17, 2010, the Federal Bureau of Investigation ("FBI") received the first of two reports from the National Center for Missing and Exploited Children ("NCMEC") containing its analysis of a series of pornographic items recovered from

---

[3]     Defendant suggests that he was blindsided by the Government's decision to seek restitution. See, e.g., Def.'s Reply to Govt.'s Memo. at 2 [Dkt. No. 42]. As the facts discussed here make clear, Defendant had ample notice that the Government would seek restitution and that it is mandatory in this case.

-3-

Defendant. The FBI prepared a report based on NCMEC's submission which identified the known victims of the materials and provided the report to counsel for the Government on or about March 1, 2010. Within five business days, the Government sent requests for victim impact statements, including the need for restitution, to those victims who had indicated their wish to receive such requests.[4] Thus, the Government did not have the information it needed to ascertain the victims' losses 60 days prior to the scheduled sentencing date of April 15, 2010, as required by 18 U.S.C. § 3664(d)(1).

On March 25, 2010, the United States Probation Office submitted a Final Presentence Investigation Report [Dkt. No. 16] which indicated that restitution was mandatory, but did not specify the amounts sought. On March 30, 2010, the Government asked to continue the sentencing because the second NCMEC report had not yet been completed. Defendant raised no objection, and the Court granted the request, continuing the sentencing to May 19, 2010. On May 10, 2010, the Government submitted a Sentencing Memorandum

---

[4]     As the Government pointed out at the September 30, 2010 Status Conference, the process for seeking restitution is quite complicated in cases involving child pornography. The Government, acting through NCMEC, must identify victims based on the pornographic materials seized, contact those victims who have indicated that they wish to receive notice of cases involving them, and receive detailed information from them regarding the amount of restitution sought. In this case, the Government undertook this process with regard to approximately 800 images seized from Defendant. Govt.'s Mot. at 2.

-4-

[Dkt. No. 23] which requested restitution but did not specify any amounts claimed by the victims.

On May 19, 2010, Monzel was sentenced on each count to 120 months of incarceration followed by 10 years of supervised release, to run concurrently, and was ordered to pay a $200.00 special assessment. At the sentencing, the Government raised the issue of restitution and asked for a briefing schedule so that it could obtain more information from the victims as to the amounts requested. The Court raised the procedural issue of whether the sentence could be entered without a determination of the restitution issue, to which the Government responded that the Court "can defer the decision on the restitution for a period of up to 90 days, and have the sentence proceed . . . ." Tr. at 5-7 (May 19, 2010).[5]

---

[5]     This characterization of 18 U.S.C. § 3664(d)(5)'s procedures was somewhat in error. Section 3664(d)(5) states that the Government must inform the Court at least 10 days prior to the sentencing if the victims' losses are unascertainable, and that the Court should set a date for a final determination of losses not to exceed 90 days after sentencing. The Government failed to provide advance notice that the victims' losses were unascertainable. Defendant argues that § 3664(d)(5) also requires the Court to set the date for a final determination of the victims' losses prior to the original sentencing hearing. Def.'s Reply to Govt.'s Memo. at 4. However, the statute does not specify when the Court must set the date; it only specifies that the date must not exceed 90 days after sentencing: "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5).

Defense counsel agreed with the Government on this procedural point. Id. However, defense counsel argued that the Government's delay in requesting restitution had resulted in waiver of its Motion for an Order of Restitution at the sentencing.[6] The Court declined to rule on the issue without briefing from the parties, which it ordered to be submitted within 35 days.

Around this same time,[7] the Government received requests for restitution from three of the thirty identified victims. The three victims are identified by the pseudonyms "Amy," "Tara," and "Vicky" in the Government's Motion and in this Opinion to protect their privacy. Of the files and videos recovered from Monzel's memory devices, five were part of the "Vicky" series, one was part of the "Misty" series (in which Amy appeared), and two were part of the "Tara" series. Govt.'s Mot. at 3. The Government provided the victims' requests for restitution to defense counsel on, respectively, March 5, 2010, May 17, 2010, and May 29, 2010.

On June 8, 2010, the Government submitted a Consent Motion for an extension of time to file its Motion for Order of Restitution by

---

[6]    The Government argues that Defendant waived his argument under 18 U.S.C. § 3664(d)(1) because he did not raise it at the May 19, 2010 sentencing. The Court disagrees. As stated, Defendant made the argument, which he termed a "waiver argument," at the sentencing that the Government should have submitted its request for restitution in advance of that date. Tr. at 37 (May 19, 2010). Given this, the Court is satisfied that Defendant did not waive any arguments under § 3664(d)(1).

[7]    The record does not indicate the exact dates.

-6-

two days, to June 10, 2010, which the Court granted [Dkt. No. 33].

On June 24, 2010, Defendant submitted a Consent Motion for a 60-day extension of time to file his response to the Government's Motion and to vacate the status hearing scheduled for July 9, 2010 [Dkt. No. 35]. Defense counsel explained that he was requesting a new status hearing "so that the Defendant can 1) on the record, waive the 90 day time limit in 18 U.S.C. § 3664(d)(5), and 2) update the Court on the status of discussions regarding informally resolving the restitution issue in this case." Def.'s Consent Mot. at 2 [Dkt. No. 35].

Defendant's Consent Motion was granted, although the status conference was continued beyond the 90-day time limit, to September 2, 2010.[8] Neither party objected to this continuation. After Defendant filed his response to the Government's Motion on August 25, 2010, the Government filed yet another Consent Motion, which the Court granted, for an extension of time until September 27, 2010 to file its Reply.

On September 2, 2010, before the Government's Motion for an Order of Restitution had been fully briefed, a further status conference was held in this case. Monzel formally raised his argument that the Government had failed to comply with the 60-day time limitation in § 3664(d)(1). He did not waive the 90-day time

---

[8]    The 90-day period, which began to run from the May 19, 2010 sentencing, ended on August 17, 2010.

-7-

limit in 18 U.S.C. § 3664(d)(5), which had by that point expired. The Court ordered additional briefing on these time limitation issues to be filed by September 16, 2010, with any responses due September 27, 2010.

By September 27, 2010, both the Government's Motion for an Order of Restitution and the §§ 3664(d)(1) and (d)(5) time limitation issues were fully briefed. A status conference was held on September 30, 2010 at which the parties argued the legal merits of the time limitation issues. A motion hearing on the Government's Motion for Order of Restitution was then held on October 5, 2010, at which the parties requested that the Court rule on proximate cause before hearing argument on the amount and apportionment of any damages.

**II. Analysis**

Three issues arising out of the Government's Motion for an Order of Restitution will be addressed in this Opinion. First, Defendant's argument that the Government is procedurally barred under 18 U.S.C. §§ 3664(d)(1) and (d)(5) of the MVRA from seeking restitution will be considered. Second, the Court will consider whether the Government established proximate cause at the October 5, 2010, motion hearing on its Motion for an Order of Restitution. Finally, Defendant's request for discovery on the Government's Motion will be addressed.

## A. Time Limitations in 18 U.S.C. § 3664

As noted above, 18 U.S.C. § 2259 makes restitution mandatory for convictions under 18 U.S.C. § 2252. In 1996, the MVRA amended § 2259 to provide that the procedures for ordering and enforcing this mandatory restitution are set forth in 18 U.S.C. § 3664 of the MVRA.[9] 18 U.S.C. § 2259(b)(2). The MVRA's "primary and overarching goal . . . [is] to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." Id. (citations and internal quotations omitted).

Section 3664(d)(1) of the MVRA provides that "not later than 60 days prior to the date initially set for sentencing, the attorney for the Government, after consulting, to the extent practicable, with all identified victims, shall promptly provide the probation officer with a listing of the amounts subject to restitution." 18 U.S.C. § 3664(d)(1).

Section 3664(d)(5) provides that:

> If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing. If the

---

[9]     The MVRA was passed as part of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, § 206, 110 Stat. 1232 (1996), to supplement the Victim and Witness Protection Act of 1982, 18 U.S.C. § 3663. United States v. Moreland, No. 05-30541, 2010 WL 3607189, at *19 (9th Cir. Sept. 17, 2010).

victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order. Such order may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief.

18 U.S.C. § 3664(d)(5).

Defendant raises two arguments under the MVRA. First, he argues that the Government's Motion should be denied because the Government failed to give notice of the amounts subject to restitution 60 days prior to the sentencing, as required by § 3664(d)(1). Second, Monzel argues that the Motion should be denied because the Government failed to inform the Court within 10 days of the sentencing that the victim's losses were not ascertainable at that point. As a result of this failure, 90 days have elapsed since Defendant's sentencing without a final determination of the victims' losses, as required by § 3664(d)(5). In response, the Government argues that the time limitations set forth in the MVRA are not jurisdictional in nature, and therefore do not bar its Motion for an Order of Restitution.

The Supreme Court recently considered the deadline set forth in § 3664(d)(5) of the MVRA in Dolan v. United States, 130 S.Ct. 2533, 177 L.Ed.2d 108 (2010). The district court judge in Dolan had indicated at the defendant's sentencing hearing that he would order restitution, but did not make a final determination as to the amount of such restitution until months after the 90-day limitation

had expired. Id. at 2537. The question before the Court, then, was whether the restitution ordered was procedurally barred by § 3664(d)(5).

The Court in Dolan concluded that it was not. The Court distinguished between statutory time limits which are (1) jurisdictional, meaning that the expiration of the deadline absolutely deprives the court of authority; (2) "more ordinary 'claims-processing rules,' [which are] rules that do not limit a court's jurisdiction, but rather regulate the timing of motions or claims," and (3) a "time-related directive that is legally enforceable but does not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed." Dolan, at 2538 (citation omitted). The Court held that the deadlines in § 3664(d)(5) were of the third kind. Id. at 2539.

Dolan thus clearly held that the time limitations in § 3664(d)(5) do not deprive district courts of the power to order restitution.[10] Given this controlling precedent, Defendant's

_____

[10] Defendant argues that Dolan is distinguishable because the district court judge ordered restitution prior to the expiration of the time limit, leaving only the amount of restitution undetermined after the deadline had passed. In this case, for the reasons given above, the Court did not make its decision prior to expiration of the 90-day deadline as to whether an order of restitution would be entered. Although the Court in Dolan recognized this factual distinction, id. at 2537, it ultimately concluded that the 90-day time limit in the MVRA is not jurisdictional, but is a "time-related directive." Defendant's argument that the facts of this
(continued...)

-11-

argument that § 3664(d)(5) is a procedural bar to the Government's Motion for an Order of Restitution is rejected.

Although the Court in <u>Dolan</u> did not consider the time limitations set forth in § 3664(d)(1), its reasoning regarding the time limitations in § 3664(d)(5) is instructive. First, the Court stated that, because the MVRA does not specify a consequence for noncompliance with its timing provisions, "federal courts will not in the ordinary course impose their own coercive sanction." <u>Id.</u> at 2539 (internal quotation and citations omitted).

Second, the Court strongly emphasized the MVRA's intent to ensure that "victims of a crime receive full restitution."[11] <u>Id.</u> Third, the Court found that the statute's procedural provisions "seek[] speed primarily to help the victims of crime and only secondarily to help the defendant." <u>Id.</u> at 2539-40; <u>see also</u>

---

[10] (...continued)
case require a different conclusion is therefore unpersuasive. The MVRA's time limits are either jurisdictional or they are not; a conclusion that a deadline is not jurisdictional under the facts presented in <u>Dolan</u>, but is jurisdictional under the facts presented here would be both illogical and inconsistent.

[11]    In interpreting provisions of the MVRA, courts have uniformly emphasized the statute's focus on protection of victims. For example, in reliance on the statute's purpose of protecting victims, the First, Second, Fourth, and Seventh Circuits held, prior to <u>Dolan</u>, that district courts may enter restitution orders more than ninety days after sentencing so long as the defendant's substantial rights are not prejudiced. <u>See United States v. Johnson</u>, 400 F.3d 187 (4th Cir. 2005); <u>United States v. Cheal</u>, 389 F.3d 35, 49-59 (1st Cir. 2004); <u>United States v. Pawlinski</u>, 374 F.3d 536, 539 (7th Cir. 2004); <u>United States v. Zakhary</u>, 357 F.3d 186, 191 (2d Cir. 2004).

-12-

Moreland, 2010 WL 3607180, at *20-21 ("The legislative history reveals Congress's intent that the time limits in § 3664 not be relied upon for protection by defendants.") (collecting Circuit cases).

Fourth, "to read the statute as depriving the sentencing court of the power to order restitution would harm those--the victims of crime--who likely bear no responsibility for the deadline's being missed and whom the statute also seeks to benefit." Id. at 2540. Fifth, the Court noted that it has "previously interpreted similar statutes similarly." Id. Sixth, and finally, the Court noted that the defendant, as is true in this case, normally can mitigate any harm that a missed deadline might cause so long as he obtains the relevant information before the 90-day deadline expires. Id. at 2541.

All of these reasons are fully applicable to Defendant's argument regarding the import of § 3664(d)(1) of the MVRA. Thus, the Court concludes that § 3664(d)(1), like § 3664(d)(5), is also a time-related directive that is not jurisdictional in nature. See Moreland, 2010 WL 3607189, at *21 (concluding that the timing requirements in both § 3664(d)(1) and (d)(5) are not jurisdictional).

In addition, Monzel can demonstrate no prejudice which would result from the decision to proceed with consideration of the Motion for an Order of Restitution. As discussed above, Defendant

-13-

was put on notice of the possibility of a restitution order by the written plea agreement and the Rule 11 inquiry in December of 2009. See United States v. Cienfuegos, 462 F.3d 1160, 1163 (9th Cir. 2006) (when defendant signed plea agreement in which he acknowledged restitution was mandatory, he received functional equivalent of notice required under § 3664(d)(5) of the MVRA). Moreover, at the September 30, 2010 status conference the Court directly asked Defendant what prejudice would result from this Court's consideration of the Government's Motion. He could identify none apart from potentially being forced to comply with an order of restitution.

In the absence of actual prejudice to Defendant, and for the reasons set forth by the Supreme Court in Dalton, the Government's failure to comply with the deadlines in § 3664 will not result in denial of its Motion for an Order of Restitution. See id. at 1162-63 (holding that failure to comply with MVRA deadlines in § 3664 was harmless error absent actual prejudice to defendant and collecting cases). Defendant's argument that the Government's Motion for an Order of Restitution is procedurally barred by the MVRA is therefore rejected.

## B. Motion for an Order of Restitution

Next, Defendant argues that the Government cannot carry its burden under § 2259 to prove restitution. To do so, the Government must establish by a preponderance of the evidence that Amy, Tara,

-14-

and Vicky are "victims" under § 2259, that a causal connection exists between Defendant's possession of child pornography and the victims' alleged losses, and, that if a causal connection does exist, how liability should be apportioned. See United States v. Bras, 483 F.3d 103, 106-07 (D.C. Cir. 2007); United States v. Hardy, 707 F.Supp.2d 597, 597 (W.D. Pa. 2010).

### 1. Amy, Tara, and Vicky Are Victims Under § 2259

At the October 5, 2010, hearing, Defendant withdrew his argument that the Government has failed to show that the claimants here are in fact the individuals depicted in the images in his possession. Therefore, the Court will turn to examine whether these young women are "victims" as that term is defined in § 2259.

Section 2259 defines a "victim" as "the individual harmed as a result of a commission of a crime under this chapter." 18 U.S.C. § 2259(c). The MVRA similarly defines a victim as a person "directly and proximately harmed" as a result of the offense. 18 U.S.C. §§ 3663(a)(2) and 3663A(a)(2).

It is beyond dispute that child pornography victims suffer from trauma as a result of their sexual abuse, and that the knowledge that anonymous individuals continue to view and distribute images of their abuse exacerbates the victims' feelings of fear, anxiety, and powerlessness. See United States v. Ferber, 458 U.S. 747, 758-61 (1982); Hardy, 707 F.Supp.2d 597; Govt. Ex. 2 (Psychological Status Report of Vicky Submitted by Dr. Randall L.

Greene, Clinical Psychologist (July 5, 2010)) (discussing victim's recurring anxiety attacks, dissociative symptoms, and post-traumatic stress disorder).

In Ferber, the Supreme Court described the various harms suffered by children whose sexual exploitation is recorded in pornographic materials. First, the production of such pornographic materials establishes a "permanent record of the children's participation," the circulation of which exacerbates the harm to the child. Second, the demand for child pornography by end consumers like Monzel creates incentives for the continued abuse and exploitation of children, as well as for the continued distribution of their images. Ferber, 458 U.S. at 759-60; see also Ashcroft v. Free Speech Coalition, 535 U.S. 234, 249, 122 S.Ct. 1389 (2002) (stating, in discussion of relationship between child pornography and sexual abuse, that "[l]ike a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being"). The Third Circuit has specifically addressed the harm caused by possession of child pornography, as opposed to distribution, concluding that the defendant's consumption of such images "directly contribute[s] to this continuing victimization." United States v. Goff, 501 F.3d 250, 259 (3d Cir. 2007).

Thus, it is clear that Amy, Tara, and Vicky were harmed as a result of Defendant's possession of images exhibiting their abuse.

Indeed, Monzel acknowledged as much at his sentencing when he submitted a statement that "every time I looked at a picture or video I was victimizing that child." Tr. at 43 (May 19, 2010). The Court therefore concludes that Amy, Tara, and Vicky are victims within the meaning of the term as it is used in § 2259.

## 2. **Defendant's Conduct Is a Proximate Cause of the Victims' Losses**

The main issue argued by the parties at the October 5, 2010 hearing was whether the victims' losses were caused by Defendant's possession of images depicting their abuse. As an initial matter, it is necessary to identify the losses which the Government alleges Amy, Tara, and Vicky have suffered.[12] Amy seeks restitution in the amount of $3,263,758 for medical services relating to physical, psychiatric, or psychological care, physical and occupational therapy or rehabilitation, transportation, temporary housing, child care expenses, lost income, and attorney's fees and other costs. Tara seeks restitution in the amount of $2,851.20 for travel to and from her therapy sessions. Vicky seeks restitution in the amount of $312,953.60 for future mental health counseling, the costs of an initial forensic evaluation, an updated evaluation,

---

[12]    The Court only identifies the losses alleged for the purposes of considering the causal connection between them and Defendant's conduct. The Court is not deciding that the Government has met its burden to prove the losses or the amount to be apportioned to Monzel. Those issues will be decided after additional briefing, evidence, and argument from the parties.

vocational/educational costs, out-of-pocket expenses, and attorney's fees.

Restitution is generally available only for losses "caused by" the conduct underlying the offense of conviction. <u>Hughey v. United States</u>, 495 U.S. 411, 416 (1979). Section 2259 states that victims of child sexual abuse and exploitation--defined as the individual harmed "as a result of" the crime--are entitled to restitution for "any [] losses suffered . . . as a proximate result of the offense." 18 U.S.C. § 2259. This language has led virtually every court which has considered the issue to conclude that the Government must establish a causal connection between the defendant's criminal conduct and the victim's alleged losses. <u>See</u> <u>Hardy</u>, 2010 WL 1543844 at *7 (collecting cases).

In this case, the parties agree that the Government must prove proximate causation.[13] Proximate causation is a "generic label" for "the judicial tools used to limit a person's responsibility for the consequences of that person's own acts. At bottom, the notion of proximate cause reflects 'ideas of what justice demands, or of what is administratively possible and convenient.'" <u>Holmes v. Securities</u> <u>Investor Protection Corp.</u>, 503 U.S. 258, 268, 112 S.Ct. 1311, 1318,

---

[13]    Although counsel for the Government suggested at various points during the October 5, 2010 hearing that § 2259 "assumes" causation, the United States' formal, written position is that proximate cause must be proven to justify issuance of an order of restitution under § 2259. <u>See</u> Govt.'s Mot. at 12; <u>see</u> <u>also</u> Def.'s Opp'n at 2 (agreeing that proximate cause must be proven under § 2259).

-18-

117 L.Ed.2d 532 (U.S. 1992) (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 41, p. 264 (5th ed. 1984)). However, the parties disagree as to whether proximate causation under § 2259 encompasses conduct such as Monzel's within the scope of liability for restitution.

Both the state and federal systems uniformly employ the concept of proximate causation as a means to limit the scope of liability.[14] However, there is no single approach to proximate causation in either the federal or state courts, with some focusing on the foreseeability of the harm and others asking whether the harm is factually or temporally remote from the defendant's conduct. See Restatement (Third) of Torts § 29 cmts. (2010) (discussing various approaches to proximate causation in federal and state courts). Many courts have incorporated the "substantial factor" test, which asks whether the defendant's conduct was a substantial factor in producing the harm. See, e.g., id. Reporters' Note cmt. a (2010) (collecting cases that "have understood or used substantial factor" as standard for proximate cause); United States v. Crandon, 173 F.3d 122, 125 (3d Cir. 1999) (interpreting "proximate cause" under § 2259 to include a "substantial factor"

---

[14]    Although restitution under § 2259 is imposed as part of a criminal defendant's sentence, restitution "is essentially a civil remedy created by Congress and incorporated into criminal proceedings . . . ." United States v. Carruth, 418 F.3d 900, 904 (8th Cir. 2005). Consequently, in its analysis of proximate causation the Court draws on the well developed discussion in civil cases involving tortious conduct.

-19-

requirement). In recent years, however, the substantial factor test has fallen into disfavor because its lack of concreteness has caused considerable confusion.[15] See Owens v. Republic of Sudan, 412 F.Supp.2d 99, 110 (D.D.C. 2006); Restatement (Third) of Torts § 29 (2010).

In part because of confusion over the precise definition of proximate cause, the American Law Institute ("ALI") very recently adopted a two-pronged approach to causation. This approach asks (1) whether the actor's conduct was a necessary condition of the harm (but-for or factual cause) and (2) whether the harm was the product of the risks that made the actor's conduct unlawful (scope of liability or proximate cause).[16] Restatement (Third) of Torts §§ 27, 29 (2010). Although § 29 was only recently adopted, many state and federal courts have similarly distinguished between factual cause and proximate cause.[17] See id. cmt. g (collecting over two dozen

---

[15]  In addition to the substantial factor test, the larger term "proximate causation" also has fallen into disfavor among scholars because "it is an especially poor [term] to describe the idea to which it is connected," which is the limitation of the scope of liability. Restatement (Third) of Torts, Special Note on Proximate Cause (2010).

[16]  Despite the well-established reputation of the ALI, the Court has strong concerns about whether the second prong of its causation analysis, which addresses the scope of liability, is going to be any easier or clearer for judges, who must write appropriate instructions on causation, or for jurors, who must apply them.

[17]  Legal scholars have also largely adopted the ALI's distinction between factual and proximate causation. "The only remotely modern casebook that the [Restatement] Reporters found that did not (continued...)

-20-

cases from state and federal courts which distinguish between factual causation and proximate causation). The Court will thus consider each issue of causation in turn.

Under the first prong, but-for or factual causation asks whether the actor's conduct was a necessary condition to cause the victims' harm. <u>See</u> Restatement (Third) of Torts § 27 (2010) (discussing factual causation). Monzel argues that the losses alleged "[are] incurred whether or not the Defendant possessed, received or distributed those images," which is in essence a challenge to the Government's evidence that his conduct was a but-for cause of the victims' losses. Def.'s Opp'n at 7.

As has already been discussed, see supra Section II.B.1, the possession of images depicting child sexual abuse causes harm to the child victim which is independent of the separate acts of initial abuse and subsequent distribution. When a victim of child pornography receives notice that yet another individual is in possession of their images, that notice results in heightening the victims' long-term fear and anxiety that people are watching their most painful childhood moments, that they will be recognized by strangers on the street, or even friends and acquaintances, or that individuals in possession of their images will attempt to contact

---

[17](...continued)
contain separate treatment of factual cause and proximate cause is now 20 years old and no longer in print." Restatement (Third) of Torts cmt. g (2010) (citing Richard A. Posner, <u>Tort Law: Cases and Economic Analysis</u> 543 (1982)).

them, as has happened in the past. <u>Ferber</u>, 458 U.S. at 759 n.10 ("It is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions . . . ."). Although the victims may have been suffering from such fear and anxiety prior to an individual defendant's conduct, each notification of a defendant's conduct perpetuates the trauma, thereby prolonging recovery, and increasing harm to the victim. <u>Ashcroft</u>, 535 U.S. at 249. For these reasons, the Court concludes that, Monzel's conduct is a factual cause of the harm suffered by Amy, Tara, and Vicky.

Defendant's argument, however, is that the same harm would have been caused by the possession of the victims' images by countless other individuals even if he had never possessed the images. However, even if the same anxiety and fear which the victims now suffer would have been caused by others in any event, that is no reason to ignore Defendant's responsibility for the harm that he has caused. In cases such as these where there are "multiple sufficient causes" of the injury, courts generally regard but-for or factual causation as inappropriate. <u>See</u>, <u>e.g.</u>, <u>Kilburn v. Socialist People's Libyan Arab Jamahiriya</u>, 376 F.3d 1123, 1129 (D.C. Cir. 2004) (noting that when "application of a 'but for' standard to joint tortfeasors could absolve them all, . . . courts generally regard 'but for' causation as inappropriate"); Restatement (Third) of Torts § 27 (2010) ("[C]ourts have long

-22-

imposed liability when a tortfeasor's conduct, while not necessary for the outcome, would have been a factual cause if the other competing cause had not been operating.").

Consequently, the first prong of causation--factual causation--is no obstacle to the Government's Motion. The critical causation issue in dispute is thus the second prong, or proximate causation. In other words, the parties disagree as to whether the Government's evidence has sufficiently demonstrated that the losses alleged fall within the scope of Defendant's liability for his conduct.

Our Court of Appeals has not yet considered the "harm within the risk" approach to proximate causation adopted in the Third Restatement, although at least one district court in this Circuit has adopted it. Owens, 412 F.Supp.2d 99. In Kilburn, upon which Owens relied heavily, our Court of Appeals considered the standard for jurisdictional causation under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(7) ("FSIA") in a civil tort action brought by the estate of a murdered American citizen against Libya. 376 F.3d at 1127-30. Section 1605(a)(7) provides an exception to sovereign immunity in cases in which money damages are sought for injury or death "caused by" certain acts.

Kilburn relied on a Supreme Court case in which the words "caused by" were interpreted in a federal admiralty statute to require only a showing of "proximate cause," and not but-for or factual cause. See id. (relying on Jerome B. Grubart, Inc. v. Great

Lakes Dredge & Dock Co., 513 U.S. 527, 536-38, 115 S.Ct. 1043, 1045-51, 130 L.Ed.2d 1024 (1995)). The Court in Kilburn concluded that the same showing of proximate cause, but not but-for causation, was required under the FSIA. Id. However, because the Court did not elaborate on the proper standard for proximate cause, Kilburn did not address in any detail the issues presented in this case.

In Owens, a later case involving the FSIA, the district court concluded that § 1605(a)(7)'s proximate cause requirement does not incorporate the substantial factor test proposed by defendants, in part because it is now disfavored. Owens, 412 F.Supp.2d at 111. Instead, the district court adopted the "harm within the risk" approach to proximate cause found in § 29 of the Restatement (Third) of Torts, which asks "whether there is an intuitive relationship between the act(s) alleged and the damages at issue (that is, whether the conduct was wrongful *because* that type of damage might result)." Id. at 113, 115.

As this discussion reveals, there is no definitive standard in our Circuit for proximate causation, either in general or more specifically under § 2259. In the absence of such a clear standard, and in recognition of the fact that courts are moving away from the substantial factor test, the Court concludes, as did Owens, that it is appropriate to rely upon the "harm within the risk" approach adopted in of § 29 of the Restatement (Third) of Torts.

Other factors counsel this conclusion as well. First, this approach comports with the traditional understanding of proximate causation as a judicially crafted tool which "eliminates the bizarre" by requiring a "reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered." Kilburn, 276 F.3d at 1128 (citing Grubart, 513 U.S. at 536). Second, this approach comports with the clear intent of Congress to extend the scope of liability for restitution to include those convicted under 18 U.S.C. §§ 2252(a)(4)(B). See S. Rep. No. 104-179, at 12 (1996), as reprinted in 1996 U.S.C.C.A.N. 924, 925 (describing purpose of § 2259 as "to ensure that the loss to crime victims is recognized, and that they receive the restitution that they are due" and "to ensure that the offender realizes the damage caused by the offense and pays the debt owed to the victim as well as to society").

The legislative history of 18 U.S.C. §§ 2252 makes clear that it criminalizes the possession of child pornography for the purpose of protecting the nation's children, both from the original traumatic acts of sexual abuse and from the additional harm resulting from the victims' knowledge of the circulation of images depicting their abuse. See Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009, 26-28 (1996) (listing congressional findings, which include concern that "child pornography permanently records the victim's abuse, and its

continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years"). The "risk" inherent in Monzel's participation in the child pornography market by receiving and possessing such images therefore includes the risk that the children whose abuse is depicted will suffer as a result.

The losses alleged by the Government clearly fall within the scope of this risk: all of the victims' alleged losses arise out of the need for ongoing psychological treatment and their inability to maintain normal, emotionally healthy lives as a result of the knowledge that Monzel and others continue to possess images of their abuse. The Court therefore concludes that the Government has demonstrated that the victims' alleged losses were proximately caused by Monzel's possession of these images.[18]

---

[18]     The Court notes that the approach taken by other district courts presented with the same issue of proximate causation have differed widely. Some district courts which have employed the "substantial factor" test for proximate cause have concluded that the test was met in child pornography cases involving facts similar to this case. See United States v. Aumais, No. 08-cr-711, 2010 WL 3033821, at *5 (N.D.N.Y. Jan. 13, 2010); Hardy, 707 F.Supp.2d 597 (involving conviction of possession and distribution); United States v. Brunner, No. 5:08-cr-16, 2010 WL 148433 (W.D. N.C. Jan. 12, 2010) (involving conviction of possession). However, other district courts requiring a direct connection between the victim's knowledge of the defendant's conduct and "additional loss above and beyond what they had already experienced" have denied restitution. United States v. Woods, 689 F.Supp.2d 1102, 1110 (N.D. Iowa 2010); see also United States v. Faxon, 689 F.Supp.2d 1344, 1357-60 (S.D. Fl. 2010); United States v. Paroline, 672 F.Supp.2d 781, 791-93 (E.D. Tex. 2009); United States v. Berk, 666 F.Supp.2d 182, 189-93 (D. Maine 2009).

One final issue remains: whether Defendant is to be held liable for the entire amounts claimed as losses by the victims or whether such losses should be apportioned in an appropriate manner. See Woods, 689 F.Supp.2d at 1110-12; Paroline, 672 F.Supp.2d at 791-92. That issue, which the Government need not prove with "mathematical precision," but rather "with reasonable certainty," United States v. Doe, 488 F.3d 1154, 1159-60 (9th Cir. 2007), will not be decided until after an evidentiary hearing and full briefing by the parties.

## C. Defendant's Discovery Request

In his Response to the Government's Request for Restitution [Dkt. No. 36], Monzel argues that his Sixth Amendment rights to due process and to effective assistance of counsel entitle him to a certain amount of discovery regarding damages. Specifically, Monzel seeks an Order from the Court directing the Government to provide "information regarding: (1) the victim notification process and any opt in/opt out procedures; (2) the number of prior and pending criminal prosecutions in which pornographic images of Amy, Vicky and Tara have been identified as known images; (3) depositions of Mr. Marsh [Amy's attorney] and the experts retained by him; (4) disclosure and production of the materials relied upon by Joyanna Silberg, Ph.D. [Amy's psychologist]; (5) disclosure and production of the materials and data relied upon by the Smith Economics Group, Ltd., in their calculation of the value of certain losses; and (6)

disclosure and production of the materials relied upon by Randall L. Green, Ph.D. [Vicky's psychologist]" Def.'s Response at 15. Monzel also seeks discovery "including at a minimum, access to [one of the victim's] financial data, family members' educational background and earnings data and other information requested by the expert . . . ." Id.

Monzel cites no precedent in support of his argument that he is entitled to such discovery. On the contrary, it is well settled that "[t]here is no general constitutional right to discovery in a criminal case . . . ." Weatherford v. Bursey, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977). Moreover, the legislative history of the MVRA makes clear that Congress did not intend to establish any such due process protections for defendants facing claims for restitution: "the 'sole due process interest of the defendant being protected during the sentencing phase is the right not to be sentenced on the basis of invalid premises or inaccurate information.'" Moreland, 2010 WL 3607180, at *20 (citing S.Rep. No. 104-179, at 18 (1995), as reprinted in 1996 U.S.C.C.A.N. 924, 930).

Finally, § 3664(g)(1) of the MVRA specifically bars victims from participating "in any phase of a restitution order." 18 U.S.C. § 3664(g)(1). Thus, to the extent that Defendant seeks discovery directly from the victims, it is squarely banned by § 3664(g)(1). Due process and fairness do require "that a defendant be afforded a meaningful opportunity to rebut any information presented to the

court for consideration on sentencing," which Monzel will have. United States v. Fogel, 829 F.2d 77, 91 (D.C. Cir. 1987). Because Defendant has failed to establish that it would be appropriate to grant him discovery of the information he seeks, his request is **denied**.

## CONCLUSION

For the reasons set forth above, the Court concludes that (1) the Government's Motion for an Order of Restitution **is not time-barred**; (2) the Government has met its burden to prove proximate cause in support of its Motion for an Order of Restitution; and (3) Defendant's discovery request is **denied**. The parties shall submit additional briefing on the issue of damages no later than **December 20, 2010 at 5:00 p.m.** A motion hearing will be held on damages on **January 11, 2011, at 10:00 a.m.**

October 22, 2010                    /s/ Gladys Kessler

                                    Gladys Kessler
                                    United States District Judge

**Copies via ECF to all counsel of record**