UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                    :
UNITED STATES OF AMERICA,           :
                                    :
            Plaintiff,              :
                                    :
    v.                              :    Criminal Case No. 09-243 (GK)
                                    :
MICHAEL MONZEL,                     :
                                    :
            Defendant.              :
                                    :
```

## MEMORANDUM OPINION

### I.  BACKGROUND

On December 10, 2009, Defendant Michael Monzel pled guilty to one count of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2) and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). On October 22, 2010, this Court found that Defendant's conduct was a proximate cause of the victim "Amy's" losses. [Dkt. No. 44]. On January 22, 2011, the Court ordered Defendant to pay $5,000 in restitution to Amy. [Dkt. No. 50].

On April 19, 2011, our Court of Appeals found that the restitution award to Amy was less than the harm the Defendant caused and remanded the case for reconsideration. United States v. Monzel, 641 F.3d 528 (D.C. Cir.), cert. denied, 132 S. Ct. 756 (2011). Following remand, this Court issued an opinion on November 6, 2012, finding that the Government had failed to carry its burden

-1-

of proving by a preponderance of the evidence the amount of Amy's losses caused by Defendant, and therefore denied the Government's Supplemental Request for Restitution. [Dkt. No. 70]. On August 8, 2014, our Court of Appeals issued its mandate vacating this Court's November 6, 2012 Opinion denying additional restitution to Amy and further instructing this Court to re-determine restitution for Amy in a manner consistent with the Supreme Court's decision in United States v. Paroline, 134 S. Ct. 1710 (2014). [Dkt. No. 91].

This matter is again before the Court on the Government's Supplemental Motion for Restitution pursuant to 18 U.S.C. § 2259.

## II.   Legal Standard

In Paroline, the Supreme Court examined "how to determine the amount of restitution a possessor of child pornography must pay to the victim whose childhood abuse appears in [the] pornographic materials possessed." 134 S. Ct. at 1716. The Court held that restitution is "proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." Id. at 1722. Proximate cause is a "flexible concept" that "generally refers to the basic requirement that . . . there must be some direct relation between the injury asserted and the injurious conduct alleged." Id. at 1719 (internal quotation marks and citations omitted).

"[W]here it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by

-2-

the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." Id. at 1727 (emphasis added). However, the restitution amount should be neither "severe," nor "token or nominal." Id. An award that is neither severe nor nominal "serve[s] the twin goals of helping the victim achieve eventual restitution for all her [or his] child-pornography losses and impressing upon offenders the fact that child-pornography crimes, even simple possession, affect real victims." Id.

The Supreme Court did not adopt a formula for determining restitution in this type of case. Indeed, the Court said, "[t]his cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment." Id. at 1728. To determine an appropriate restitution amount, the court must first determine "the amount of the victim's losses caused by the continuing traffic in the victim's images." Id. at 1728. After the court has determined the amount of the victim's total losses, the court must weigh several factors in determining the relative causal significance of the defendant's conduct in relation to the victim's total losses. The factors to be considered include:

-3-

the number of past criminal defendants found to have
contributed to the victim's general losses; reasonable
predictions of the number of future offenders likely to
be caught and convicted for crimes contributing to the
victim's general losses; any available and reasonably
reliable estimate of the broader number of offenders
involved (most of whom will, of course, never be caught
or convicted); whether the defendant reproduced or
distributed images of the victim; whether the defendant
had any connection to the initial production of the
images; how many images of the victim the defendant
possessed; and other facts relevant to the defendant's
relative causal role.

Id. at 1728.

## III. Analysis

### a. Amy's Losses

In its first request for restitution, the Government
estimated that Amy's total loss was $3,263,758 for medical
services, lost income, attorney's fees, and other costs. See Dkt.
No. 44 at 17. In the Government's second request for restitution,
the Government maintained that loss amount (with the exception of
reducing her claim for specific expenses by $20,563). See Dkt.
No. 70 at 1. In the instant motion, the Government makes an
additional request for $8,886,300 for reduction in the value of
life. See Mot. at 7; Ex. D, Report of Economic Losses, Dr. Stan
Smith, dated September 15, 2008, at 4 [Dkt. No. 95-3] (filed under
seal).

The Court finds that Amy's additional request for $8,886,300
is untimely and she is bound by the initial loss amount of
$3,263,758 minus $20,563 equaling $3,243,195. In addition, the

-4-

economic loss report relied on by the Government does not make it clear whether the "reduction in value of life calculations" are applicable in instances where the victim is not deceased. Ex. D at 4-6. Finally the Government's most recent request of $8,886,300 is significantly larger than the value of the life peer-estimates cited in the report. See id. (citing peer reports showing the value of life between $1.6 million to $2.9 million in 1988, $4.7 million in 2000, and $5.7 million in 2008). For these reasons, the Court will exclude the request for reduction in the value of life, and will rely only on Amy's original loss request in this case, which is also the loss amount she has consistently requested in other cases. See, e.g., Paroline, 134 S. Ct. at 1718; United States v. Hite, 113 F. Supp. 3d 91, 95 (D.D.C. 2015).

The Court finds Amy's request for lost wages and future therapy to be sufficiently established and reasonable.

b.   Restitution

The Court must now determine what portion of Amy's losses are attributable to Defendant's conduct based upon a weighing of each of the factors set forth in Paroline. With regard to the number of past criminal defendants found to have contributed to Amy's losses, the government has stated that it is aware of 197 restitution orders on behalf of Amy. Mot. at 8. As to a reasonable prediction of future offenders who will be convicted for contributing to Amy's losses, the Government has stated that it does "not have

-5-

sufficient, reliable data from which to make reasonable estimates," which the Court accepts. Id. at 8. As to a reasonable estimate of future offenders, whether or not they are caught or convicted, the Government has stated that there is no way to calculate such an estimate, which the Court also accepts. Id. at 8-9.

Pursuant to consideration of the Paroline factors, the Government has no evidence that the Defendant distributed any images of Amy or was in any way connected to the initial production of her images. Id. at 9. While the Defendant possessed over 800 files of pornography, he possessed only one single image of Amy. Opp'n at 29; Reply at 1 n. 1; Mot. at 9. "The government has no evidence that the defendant knows the victim, attempted to discover the victim's identity, or attempted to contact the victim. Nor does the government have any evidence that the defendant specifically sought images of the victim, or that the defendant paid for or received anything of value for the victim's images. The government is not aware of any efforts by the defendant to groom other minors for sexual exploitation using images of the victim." Id.

As in Paroline, the Defendant's "contribution to the causal process underlying the victim's losses was very minor, both compared to the combined acts of all other relevant offenders, and in comparison to the contributions of other individual offenders,

-6-

particularly distributors (who may have caused hundreds or thousands of further viewings) and the initial producer of the child pornography." Paroline, 134 S. Ct. at 1725.

The Government has not requested a specific restitution amount. It asserts that the Defendant has "proximately caused losses to 'Amy'" and that the Defendant's "conduct is a proximate cause of additional losses" to Amy, but does not attempt to quantify those additional losses. Mot. At 7. It asks only that the restitution be "non-token and non-nominal." Id. at 9.

The Court has reviewed the relevant case law, as well as restitution awards in a number of post-Paroline decisions. See, e.g., United States v. Santee, No. 14-CR-00118, Minute Entry (D.D.C. Sept. 24, 2014) (awarding $2,000 in restitution when defendant possessed four images); United States v. Campbell-Zorn, 2014 WL 7215214 (D. Mont. Dec. 17, 2014) (awarding restitution amounts of $23,825 and $3,136 to victims); United States v. Bellah, 2014 WL 7073287 (D. Kan. Dec. 12, 2014) (awarding amounts of $1,500, $5,000, and $7,000 to victims where number of images possessed of each victim ranged from one to sixty-eight); United States v. DiLeo, 2014 WL 5841083 (E.D.N.Y. Nov. 4, 2014) (awarding $2,000 in restitution when defendant possessed one image); United States v. McIntosh, 2014 WL 5422215 (E.D. Va. Oct. 22, 2014) (awarding $14,500 in restitution where defendant possessed 51 images and 98 videos of victim). In light of the parties'

-7-

arguments, the relevant Paroline factors, "which the Court treats as rough guideposts for determining an appropriate restitution amount," United States v. Hite, 113 F. Supp. 3d 91, 99 (D.D.C. 2015), and in light of the information provided regarding prior restitution awards for Amy, the Court, in its discretion, determines that an award of $7,500 in restitution is appropriate. The Court believes that such an amount comports with Defendant's causal – but minor -- role in Amy's ongoing losses resulting from the continued trafficking of her images.

## IV. CONCLUSION

For the foregoing reasons, the Court will **grant** the Government's Supplemental Motion for Restitution. An Order will accompany this Memorandum Opinion.

September 19, 2016

Gladys Kessler
United States District Judge

Copies to: attorneys on record via ECF

-8-